Bernard Daskal
Scott A. Harford
LYNCH DASKAL EMERY, LLP
264 West 40th Street
New York, NY 10018
Tele: 212-302-2400
Fax: 212-302-2210
daskal@lawlynch.com
harford@lawlynch.com

        -and-

Fred Pritzker (MN #0088456)
Brendan J. Flaherty (MN #0327657)
PRITZKER OLSEN, P.A.
Radisson Plaza Seven, #2950
45 South Seventh Street
Minneapolis, MN 55402-1652
Tele: 612-338-0202
Fax: 612-338-0104
elliot@pritzkerlaw.com
brendan@pritzkerlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JOHN W. MCKISSICK and PATRICIA
MCKISSICK,

                            Plaintiffs,

v.

FOREVER CHEESE, INC. and WHOLE
FOODS MARKET GROUP, INC.,

                            Defendants.

**CV 12 - 4634**

Civil No.

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

WEINSTEIN, J.

MANN. M.J.

1

John W. McKissick and Patricia McKissick, husband and wife, (collectively, "Plaintiffs"), through their attorneys Lynch Daskal Emery, LLP and Pritzker Olsen, P.A., as and for their Complaint against Defendants, allege as follows:

## PARTIES

1.     Plaintiffs John W. McKissick and Patricia McKissick reside at 3604 Burwick Court, Murrysville, Pennsylvania.

2.     Defendant Forever Cheese, Inc., (hereafter "Forever Cheese") is a corporation organized under the laws of the State of New York with its principle place of business located at 36-36 33rd Street, Suite 307, Long Island City, New York.

3.     At all relevant times, Forever Cheese was in the business of importing, packaging, labeling, manufacturing, distributing and selling cheese products to customers in New York and throughout the country.

4.     Defendant Whole Foods Market Group, Inc. (hereafter "Whole Foods") is a corporation organized under the laws of the state of Delaware with its principle place of business located at 550 Bowie Street, Austin, Texas.

5.     At all relevant times, Whole Foods was in the business of manufacturing, packaging, repackaging, processing, labeling, distributing and selling food products, including cheese, at various retail stores in New York and throughout the country.

6.     At all relevant times and upon information and belief, Whole Foods operated a retail store located at 5880 Centre Avenue, Pittsburgh, Pennsylvania.

2

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

8.      All defendants have substantial contacts with and receive benefits and income from and through the State of New York, and derived substantial revenue from interstate commerce. This includes selling, marketing, and distributing cheese products in New York.

9.      Venue is proper in the United State District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, because Defendants operate in this district, maintain facilities in this district, and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

## LISTERIOSIS AND THE OUTBREAK

10.     Listeriosis is a serious illness resulting from consumption of food contaminated with the bacteria *Listeria monocytogenes*. *Listeria monocytogenes* is one of the most virulent and deadly foodborne pathogens with a fatality rate of over twenty percent. Virtually all people who contract listeriosis require hospitalization. Those who are elderly, immune-compromised, or pregnant are particularly vulnerable.

11.     The bacteria can be killed by cooking or pasteurizing food products; however, contact with *Listeria monocytogenes* after such a "killstep" will re-contaminate the food product. This risk is heightened because *Listeria monocytogenes* tends to thrive in food processing environments, particularly in floor drains and other cool damp areas. Moreover, *Listeria monocytogenes* can easily be transferred from one area of a processing facility to another

3

through, for example, simple touching of equipment, water, mist, or on workers, their clothes, shoes and hands. In contrast to most other harmful bacteria, *Listeria monocytogenes* will grow slowly on foods stored in a refrigerator, and freezing has very little detrimental effect on the organism.

12.     These characteristics render soft cheese particularly susceptible to *Listeria monocytogenes* contamination.

13.     Once a food product, including cheese, is adulterated with *Listeria monocytogenes*, the pathogen can easily be transferred to other food products or food production surfaces if strict sanitation procedures are not followed. For example, if a knife or other cutting utensil is used to cut into cheese adulterated with *Listeria monocytogenes* and is not properly cleaned and sanitized immediately thereafter, pathogens remaining on the knife can cross-contaminate other food products and other surfaces. This problem is particularly significant in the case of cross contamination of ready-to-eat foods since they are not subject to a further "kill-step" necessary to deactivate or kill the pathogens.

14.     Because of the risks posed by *Listeria monocytogenes*, the Centers for Disease Control and Prevention (hereafter "CDC"), in collaboration with state public health officials, actively monitor listeriosis cases throughout the country.

15.     State and CDC labs routinely subject samples of *Listeria monocytogenes* obtained from sickened individuals to a genetic subtyping process known as "Pulsed-Field Gel Electrophoresis" (PFGE). The results—akin to genetic fingerprints—are then loaded to a national database used to determine whether the illnesses were caused by a common genetic strain of *Listeria monocytogenes*.

16.     Through this system, the CDC detected a highly unique genetic pattern of *Listeria monocytogenes* among listeriosis patients in the spring and summer of 2012.

17.     As of September 11, 2012, the CDC had identified 14 people from eleven states who had contracted this genetically unique and very rare strain of *Listeria monocytogenes* (hereafter "outbreak strain").

18.     The CDC and other public health officials launched an epidemiological investigation to determine the source of the outbreak strain. As part of this study, food consumption histories were obtained for each individual sickened by the outbreak strain (case patients). The results demonstrated a strong association with soft cheese but did not initially implicate any particular brand of cheese.

19.     Because the food histories did not reveal a definitive source of the outbreak strain among the cheeses consumed, the investigators then studied whether any particular brand was associated with the retail establishments from which case patients had purchased or consumed cheese.

20.     The results from this part of the study directly implicated Frescolina ricotta salata distributed by Defendant Forever Cheese.

21.     As part of the investigation, the Food and Drug Administration (FDA) also began testing Frescolina ricotta salata cheese. The FDA soon isolated *Listeria monocytogenes* from a sample of uncut imported Frescolina ricotta salata cheese distributed by Defendant Forever Cheese.

22.     Upon information and belief, the sample of *Listeria monocytogenes* obtained from the uncut imported Frescolina ricotta salata cheese distributed by Defendant Forever Cheese

5

matched the exceedingly rare outbreak strain identified from isolates obtained from outbreak case patients.

23.     The CDC concluded that Frescolina brand ricotta salata cheese distributed by Defendant Forever Cheese was the source of the outbreak strain and had caused the listeriosis outbreak.

24.     The CDC further concluded that because the Frescolina brand ricotta salata was processed, cut and served at the distribution, retail and consumer levels, the outbreak strain cross-contaminated other brands of soft cheese which contributed to the size and scope of the outbreak.

25.     On September 10, 2012, Defendant Forever Cheese initiated a recall of Frescolina ricotta salata cheese with production code 441202 which was sold between June 20 and August 9, 2012.

26.     On September 12, 2012, Defendant Whole Foods initiated a recall of Frescolina ricotta salata cheese sold in 21 states and the District of Columbia.  According to Whole Foods' recall notice, "The recalled ricotta salata Frescolina brand cheese was cut into wedges, packaged in clear plastic wrap and sold with a Whole Foods Market scale label using PLU 293427. All 'sell by' dates through Oct. 2 are affected…"

27.     All fourteen people who contracted listeriosis from the outbreak strain were hospitalized.  Three of those people died.

### JOHN MCKISSICK'S LISTERIOSIS INFECTION

28.     Plaintiff John McKissick contracted the outbreak strain from cheese or cheeses purchased from Defendant Whole Foods.  These cheeses were contaminated with the outbreak

strain of *Listeria monocytogenes* by adulterated Frescolina ricotta salata distributed by Defendant Forever Cheese.

29.     Forever Cheese promotes itself as "Masters of the Mediterranean" and states on its website that "Forever Cheese's goal is to source the highest quality, most unique and genuine products from Italy, Spain, Portugal, and Croatia to import to the United States." (available at www.forevercheese.com)   About its Ricotta Salata Soft cheese, Forever Cheese states on its website that it is pasteurized and is "enjoyable for cooking, salads or on its own."

30.     Whole Foods promotes itself as an expert at selecting safe high-quality cheese for sale at its retail stores.   For example, the Whole Foods website (available at: http://www.wholefoodsmarket.com/department/cheese) states:

> Walk into our cheese department and you'll find hundreds and hundreds of the best cheeses we can get our hands on from all over the world and right in our backyards. Free samples, naturally.
> Holy cow, goat, sheep and buffalo! We'll admit it. We're obsessed with cheese. You may have already guessed it, though, judging by the size of our cheese counters. Walk into our stores and you'll find anywhere from 250 to 1,000 of the best cheeses we can get our hands on from all over the world.
>
> Because we always have your best interests in mind, many of the cheeses we sell are organic and most of them are free of rBST (recombinant bovine growth hormone, that is). And we don't sell any cheese that contains artificial flavors, colors or preservatives either. Hungry for more?
>
> We personally visit farms around the world to choose our international selection of cheeses, whether it's locally made chevre or delectable manchego from Spain.

31.     On May 27, 2012, Plaintiff Patricia McKissick purchased a variety of cheeses from the cheese department at the Whole Foods store located at 5880 Centre Avenue, Pittsburgh, Pennsylvania.

32.     Upon information and belief, prior to and on May 27, 2012, Defendant Whole Foods also carried Frescolina ricotta salata distributed by Defendant Forever Cheese.

33.     Upon information and belief and at all relevant times, the Whole Foods cheese departments processed both pre-cut and un-cut cheese rounds into smaller portions for retail sale.

34.     Upon information and belief, Whole Foods processed Frescolina ricotta salata cheese that was previously adulterated with the outbreak strain of *Listeria monocytogenes* by removing it from its original packaging, cutting it into smaller portions, repackaging it for retail sale and relabeling it.

35.     In doing so, Defendant Whole Foods cross-contaminated other cheese products sold in Whole Foods stores with the outbreak strain.

36.     Mr. McKissick consumed a portion of each of the cheeses purchased on May 27, 2012, over the following days.

37.     On or about June 7, 2012, Mr. McKissick began experiencing the classic symptoms of listeriosis: nausea, vomiting, muscle aches and fever.

38.     By June 10, 2012, his symptoms had radically intensified and his wife brought him to the hospital.

39.     Doctors ordered a spinal tap and Mr. McKissick's cerebrospinal fluid tested positive for *Listeria monocytogenes*.

40.     This sample was forwarded to the state health department and ultimately to the CDC for PFGE analysis. The PFGE pattern matched the outbreak strain.

41.     As a result of the listeriosis infection, Mr. McKissick suffered profound nervous-system and cognitive dysfunction, including ventilator-dependent respiratory failure.   He required weeks of hospitalization and rehabilitation, and continues to suffer a variety of

neurological symptoms, including but not limited to cognitive dysfunction, left-sided weakness and hand tremors all as a direct result of the listeriosis infection caused by the outbreak strain.

42.     Mr. McKissick contracted the outbreak strain as a direct result of contaminated cheese distributed by Forever Cheese and sold by Whole Foods.

43.     As a result of the listeriosis infection caused by the Defendants' food, Plaintiffs suffered or will in the future suffer the following injuries and damages:

    a)  Medical and hospital expenses for the treatment of injuries;

    b)  Physical and mental pain;

    c)  Damage to the marital relationship; and

    d)  Other harms and losses to be proven at trial.

44.     One or more of the exceptions under CPLR 1602 apply to Defendants.

## FIRST CAUSE OF ACTION
## AS AGAINST FOREVER CHEESE
### (Product Liability – Manufacturing Defect)

45.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

46.     At all relevant times, Defendant Forever Cheese was a manufacturer, importer, packager, labeler, distributor, seller and/or was in the chain of distribution for the Frescolina ricotta salata cheese that caused Plaintiffs' injuries.

47.     The cheese imported, packaged, labeled, transported, manufactured and distributed by Defendant Forever Cheese that caused Plaintiffs' injuries was adulterated with the outbreak strain of *Listeria monocytogenes*, and therefore was in a defective condition unreasonably dangerous to ordinary consumers and members of the public.

48.     The product was in a defective condition when it left the control of Defendant Forever Cheese.

49.     Defendant Forever Cheese's importation, packaging, labeling, transportation, manufacture and distribution of the adulterated cheese was a substantial factor in bringing about Plaintiffs' injuries.

50.     The product was used as intended, for retail sale and human consumption.

51.     Consumers like Plaintiffs could not, by the exercise of reasonable care, have discovered the defect, perceived its danger, or avoided the injury.

52.     As a direct result of Defendant Forever Cheese's importation, packaging, labeling, transportation, manufacture and distribution of a defective food product, Plaintiffs sustained damages as set forth in the preceding paragraphs.

**WHEREFORE**, Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

## SECOND CAUSE OF ACTION
## AS AGAINST WHOLE FOODS
### (Product Liability – Manufacturing Defect)

53.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

54.     At all relevant times to this action, Defendant Whole Foods was a manufacturer, packager, labeler, distributor, seller and/or was in the chain of distribution for both Frescolina brand ricotta salata cheese and the adulterated cheese or cheeses consumed by Plaintiff John McKissick.

55.     The cheese product designed, manufactured, distributed, supplied, marketed, and sold by Defendant Whole Foods that caused Plaintiff John McKissick's listeriosis infection was adulterated with the outbreak strain of *Listeria monocytogenes*, and was in a defective condition unreasonable dangerous to ordinary consumers and members of the public.

56.     The cheese product that caused Plaintiff John McKissick's listeriosis infection was in a defective condition when it left the control of Defendant Whole Foods.

57.     Defendant Whole Foods' manufacture and distribution of the adulterated cheese product was a substantial factor in bringing about Plaintiffs' injuries.

58.     The product was used as intended, for retail sale and human consumption.

59.     Consumers like Plaintiffs could not, by the exercise of reasonable care, have discovered the defect, perceived its danger, or avoided the injury.

60.     As a direct result of Defendant Whole Foods' design, manufacture, supply, marketing, and selling of a defective food product, Plaintiffs sustained damages as set forth in the preceding paragraphs.

**WHEREFORE**, Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

### THIRD CAUSE OF ACTION
### AS AGAINST WHOLE FOODS
### (Negligence – Forever Cheese)

61.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

62.    Defendant Forever Cheese owed a duty to all customers, including the Plaintiffs, to produce food that was safe to eat, that was not adulterated with potentially harmful pathogens and that was not in violation of applicable food and safety regulations.

63.    Defendant Forever Cheese breached this duty by, among other acts and omissions, failing to inspect and screen the makers of the Frescolina ricotta salata cheese it imported, promoted, distributed and sold; failing to inspect and test the Frescolina ricotta salata cheese it imported, distributed and sold; failing to maintain proper sanitation at its facilities; failing to follow safe practices in the storage, packaging, handling, labeling and transportation of Ricotta Salata Frescolina brand cheese;  failing to warn distributors, retailers and consumers of the adulteration of its Ricotta Salata Frescolina brand cheese; misrepresenting the quality and suitability of its product for consumption; and other acts and omission as are revealed through investigation and discovery.

64.    As a direct and proximate result of Defendant Forever Cheese's negligence, Plaintiffs sustained damages as set forth in the preceding paragraphs.

**WHEREFORE**, Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

### FOURTH CAUSE OF ACTION
### AS AGAINST WHOLE FOODS
**(Negligence)**

65.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

12

66.     Defendant Whole Foods owed a duty to all customers, including the Plaintiffs, to produce food that was safe to eat, that was not adulterated with potentially harmful pathogens and that was not in violation of applicable food and safety regulations.

67.     Defendant Whole Foods breached this duty by, among other acts and omissions, inadequately evaluating, screening, auditing, and monitoring the makers of the Frescolina ricotta salata cheese it marketed and sold; failing to adequately test or require testing of the Frescolina ricotta salata cheese; using unsanitary food-handling practices resulting in the cross-contamination of cheese products other than Frescolina ricotta salata; failing to warn consumers, including Plaintiffs, that its cheese products were adulterated with *Listeria monocytogenes*; misrepresenting the quality and suitability of its product for consumption; and other acts and omission as are revealed through investigation and discovery.

68.     As a direct and proximate result of Defendant Whole Foods' negligence, Plaintiffs sustained damages as set forth in the preceding paragraphs.

**WHEREFORE**, Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

### FIFTH CAUSE OF ACTION
### AS AGAINST FOREVER CHEESE
#### (Negligence *Per Se*)

69.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

70.     Defendant Forever Cheese, its employees, agents, or those working on its behalf, as providers of food products in the United States of America, owe a duty to comply with the Federal Food, Drug and Cosmetics Act (FDCA), 21 U.S.C. § 331. The FDCA makes it unlawful

13

to manufacture, sell or distribute food that is adulterated with dangerous bacteria, such as *Listeria monocytogenes*. The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se*.

71.    The New York McKinney's Agriculture and Markets Law § 199-a makes it unlawful to manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house of other place of public entertainment any article of food which is adulterated with dangerous bacteria, such as *Listeria monocytogenes*. The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se*.

72.    The Pennsylvania Food Safety Act, 3 Pa. Cons. Stat. Ann. § 5723 makes it unlawful to manufacture, sell, deliver, consign, bail, hold or offer for sale any food that is adulterated with dangerous bacteria, such as *Listeria monocytogenes*. The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se*.

73.    As a result of the failure of Defendant Forever Cheese, its employees, agents, or those working on its behalf to comply with the food safety laws as described above, Plaintiffs sustained damages as set forth in the preceding paragraphs.

14

**WHEREFORE**, Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

**SIXTH CAUSE OF ACTION**
**AS AGAINST WHOLE FOODS**
**(Negligence *Per Se*)**

74.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

75.     Defendant Whole Foods, its employees, agents, or those working on its behalf, as providers of food products in the United States of America, owe a duty to comply with the Federal Food, Drug and Cosmetics Act (FDCA), 21 U.S.C. § 331. The FDCA makes it unlawful to manufacture, sell or distribute food that is adulterated with dangerous bacteria, such as *Listeria monocytogenes.* The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se.*

76.     The New York McKinney's Agriculture and Markets Law § 199-a makes it unlawful to manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house of other place of public entertainment any article of food which is adulterated with dangerous bacteria, such as *Listeria monocytogenes.* The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se.*

77.     The Pennsylvania Food Safety Act, 3 Pa. Cons. Stat. Ann. § 5723 makes it unlawful to manufacture, sell, deliver, consign, bail, hold or offer for sale any food that is adulterated with dangerous bacteria, such as *Listeria monocytogenes*. The defendant, manufactured, sold, and distributed cheese that was adulterated with *Listeria monocytogenes*, and therefore breached the duty to comply with this law. Plaintiffs are members of the class intended by the legislature to be protected and the harm is the kind which the statute was intended to prevent. Such conduct constitutes negligence *per se*.

78.     As a result of the failure of Defendant Whole Foods, its employees, agents, or those working on its behalf to comply with the food safety laws as described above, Plaintiffs sustained damages as set forth in the preceding paragraphs.

### SEVENTH CAUSE OF ACTION
### AS AGAINST WHOLE FOODS
### (Breach of Warranty [N.Y. U.C.C §§ 2-313, 2-314])

79.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

80.     The food product, which was designed, manufactured, supplied, marketed, and sold by Defendant Whole Foods, was expected to, reached, and was consumed by Plaintiff John McKissick without substantial change in its condition when the product left the control of Defendant Whole Foods.

81.     Defendant Whole Foods, through its advertising, marketing and promotional material, impliedly and expressly warranted that its food products were safe for their intended use, which was consumption by persons, such as Plaintiff John McKissick.

16

82.     Defendant Whole Foods breach its implied and express warranty in that the food product eaten by Plaintiff John McKissick was unsafe in light of the risk of life-threatening pathogens contaminating the food product, including *Listeria monocytogenes*.

83.     As a direct and proximate result of Defendant Whole Foods' breach of warranty, Plaintiffs sustained damages as set forth in the preceding paragraphs.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

**EIGHTH CAUSE OF ACTION**
**AS AGAINST WHOLE FOODS AND FOREVER CHEESE**
**(Loss of Consortium)**

84.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein and allege as follows:

85.     At all relevant times, John McKissick's wife Patricia McKissick suffered damages as the result of the loss of John McKissick's services, society, and consortium.

86.     As a direct and proximate result of Defendants' conduct and the defective, unsafe, and unreasonably dangerous condition of the food product distributed and sold by Defendants, John McKissick's wife Patricia McKissck has been deprived of the services, society, and consortium of her husband.

**WHEREFORE,** Plaintiffs demand judgment for compensatory damages, in amounts to be proved at trial, and that Plaintiffs be awarded reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

## DAMAGES

87.     Plaintiffs have suffered general, special, incidental, and consequential damages as a direct and proximate result of the acts and omissions of the defendants, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, part and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

88.     The plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, as follows:

a.  compensatory damages in an amount to be determined at trial;

b.  punitive and/or exemplary damages for wanton, willful, fraudulent, reckless acts of defendants which demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the plaintiffs in an amount sufficient to punish defendant and deter future similar conduct;

c.   attorneys' fees, expenses, prejudgment interest, and costs of this action; and

d.   for any other relief this Court deems just and proper under the circumstances.


Dated: September 17, 2012                    Respectfully Submitted,

                                             LYNCH DASKAL EMERY, LLP

                                             Bernard Daskal
                                             Scott A. Harford
                                             264 West 40th Street
                                             New York, NY 10018
                                             Tele: 212-302-2400
                                             Fax: 212-302-2210
                                             daskal@lawlynch.com
                                             harford@lawlynch.com


                                             and

                                             PritzkerOlsen, P.A.
                                             Fred Pritzker (MN #0088456)
                                             Brendan J. Flaherty (MN #0327657)
                                             Attorneys for Plaintiffs
                                             Radisson Plaza Seven, #2950
                                             45 South Seventh Street
                                             Minneapolis, MN 55402-1652
                                             612-338-0202
                                             612-338-0104 Fax
                                             elliot@pritzkerlaw.com
                                             brendan@pritzkerlaw.com